UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GEORGE GALGANO,

                              Plaintiff,                        **DECISION AND ORDER**

            -against-                                  16 Civ. 3572 (KMK) (PED)

COUNTY OF PUTNAM, NEW YORK,
ADAM LEVY, ANDRES GIL, LOURDES
GONZALEZ, HENRY LOPEZ and
MICHAEL NAGLE,

                             Defendants.
----------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**

     Presently before this Court is the Individual County Defendants' ("ICDs") motion for sanctions pursuant to Rule 37(e) of the Federal Rules of Civil Procedure ("FRCP") against plaintiff for his alleged intentional spoliation of evidence. Dkt. #667. Familiarity with the record is presumed. For the reasons that follow, the ICDs' motion is **DENIED**.

### I. BACKGROUND

     On May 14, 2014, defendants sought and obtained a court order for a pen register for plaintiff's cell phone. On June 6, 2014, defendants sought and obtained a court order authorizing them to eavesdrop on plaintiff's cell phone seven days a week, twenty-four hours a day, from June 7, 2014 through July 2, 2014. On July 2, 2014, defendants and other law enforcement officials obtained and executed search warrants on plaintiff's home, office and van, which resulted in the seizure of, *inter alia*, plaintiff's iPhone with the corresponding phone number

(914) 325-1500.[1]  On or about July 14, 2014, plaintiff obtained another iPhone and began using the phone number **(914) 318-3021**.  Dkt. #676-1, ¶ 6.

On August 20, 2014, plaintiff was indicted on charges of bribing a witness, tampering with a witness and conspiracy.  On September 30, 2014, plaintiff served a Notice of Claim alleging claims against the County of Putnam, the Putnam County District Attorney's Office, the Town of Carmel and the Town of Carmel Police Department for, *inter alia*, illegal search and seizure, defamation and negligent training and supervision.  Dkt. #668-2.

On or about October 6, 2014, plaintiff stopped using the phone number (914) 318-3021 and began using the phone number **(914) 325-1263**.  Dkt. #676-1, ¶ 7.  Plaintiff states:  "I do not believe I purchased a different telephone when I started using number (914) 325-1263.  *Id.*  On or about December 2, 2014, plaintiff stopped using the phone number (914) 325-1263 and began using the phone number **(914) 325-2472**.  *Id.* ¶ 8.  He stopped using that number on or about December 28, 2014.  *Id.*  At some point in December, plaintiff obtained a second telephone.  *Id.*

On January 28, 2015, the County Court of Putnam County issued a decision and order dismissing Galgano's indictment but granted defendants leave to further investigate the case against Galgano and present the case to another grand jury.[2]  On July 10, 2015, Galgano was again charged with bribing a witness, tampering with a witness and conspiracy, and was also charged with criminally impersonating Andrew Kuchta, a defense investigator hired by the Galgano law firm who testified at the first Zaimi trial.  On October 26, 2015, the County Court of

---

[1] Plaintiff states: "Before July 2, 2014, I used only one cell phone number, (914) 325-1500, which I have used since at least 2000, and I still use today."  Dkt. #676-1, ¶ 4.

[2] The County Court subsequently vacated an injunction prohibiting the search of the computers and electronic storage devices seized on July 2, 2014.

Putnam County dismissed Galgano's indictment.

Plaintiff commenced this action on May 13, 2016 (Dkt. #1) and filed an Amended Complaint on October 14, 2016 (Dkt. #72), in which he alleged the following claims: (1) federal claims under 42 U.S.C. § 1983 against all defendants for the unlawful seizure of Galgano's communications from June 7, 2014 through July of 2014; (2) federal claims under 42 U.S.C. § 1983 against all defendants for malicious prosecution; (3) federal claims under 42 U.S.C. § 1983 against all defendants for denial of due process; (4) New York state law claims against all defendants for malicious prosecution; (5) federal claims under 42 U.S.C. § 1983 against all defendants for the unlawful search of Galgano's home, offices and motor vehicle and the seizure of his computers and electronic storage devices; (6) federal claims under 42 U.S.C. § 1983 against all defendants for the unlawful search and seizure of Galgano and the ensuing seizure of his cellular phone; (7) federal claims under 42 U.S.C. § 1983 against all defendants for the unlawful search of Galgano's computers, cellular phone, and electronic storage devices; (8) federal claims under 42 U.S.C. § 1983 against defendants Levy and Nagle for First Amendment retaliation; (9) New York state law claims against all defendants for defamation; (10) New York state law claims against all defendants for abuse of process; (11) New York state law claims against all defendants for failure to intercede; (12) federal claims under 42 U.S.C. § 1983 against defendants Putnam County, Putnam District Attorney's Office, Carmel, Carmel Police Department, Levy, Gil, Abissi, and Lopez for supervisory liability; and (13) federal claims under 42 U.S.C. § 1983 for conspiracy against the ICDs. On November 15, 2016, the Court stayed the action as to all defendants. Dkt. #78. The stay was lifted on August 17, 2017. Dkt. #122. On September 6, 2017, the Court set a briefing schedule for motions to dismiss. Dkt. #124

(modified at Dkt. #129).

On June 7, 2018 plaintiff's counsel (Mark Singer) sent an email to counsel for the ICDs (Maurizio Saviardo), confirming that counsel agreed to exchange, *inter alia*, cell phone accounts (identified by name/number and cell provider) held from January 2013 to the present (and specifying time period during which each account was held).  Dkt. #668-4.  Via email on June 8, 2018, Mr. Singer responded: "914-325-1500 is the only cellular phone number, and the provider is AT&T."  *Id.*

On December 17, 2020, in his response to the ICDs' first set of interrogatories, plaintiff disclosed the existence of one additional telephone number:

> INTERROGATORY NO. 21: Identify all social media profiles, email addresses, and cellular telephone numbers used by plaintiff during the period 2013 through 2015.
> "Plaintiff further states that, to the best of his recollection, during the time-period 2013-2015, he used the following cellular telephone numbers: (914) 325- 1500.  Plaintiff further states that he during that timeframe, he used a separate phone number solely for communication with the attorneys who were representing in relation to the criminal cases that are the subject of this lawsuit.  Plaintiff does not recall that number and it is no longer active."

Dkt. #668-5.  On January 22, 2021, plaintiff supplemented his response to the ICDs' Interrogatory No. 21:  "Plaintiff states that the following phone numbers were used by him for communications with his attorney in his criminal case in order to communicate in relation to privileged matters: (914) 325-2472; (914) 325-1263; and (914) 318-3021."  Dkt. #668-3.

According to the ICDs, plaintiff's counsel subsequently indicated: the phone numbers (914) 318-3021, (914) 325-1263 and (914) 325-2472 ("the Additional Numbers") had been disconnected; plaintiff no longer had the phones in his possession; and plaintiff did not remember the carrier for the Additional Numbers but believed it was AT&T.  Dkt. #648 (ICDs'

pre-motion letter). On or about April 23, 2021, the ICDs served a subpoena on AT&T demanding call history and billing records for the Additional Numbers from January 1, 2014 through December 31, 2015. Dkt. #668-6. AT&T produced responsive records. Dkt. #668-7, Dkt. #668-8, Dkt. #668-9. However, according to the ICDs: "by that time AT&T only maintained limited data regarding Plaintiff's cellular phones. The Defendants were able to obtain records of incoming and outgoing voice calls, but were not able to obtain any information regarding the existence or content of text messages or voicemail messages." Dkt. #669, at 8 (ECF pagination).

## II. APPLICABLE LAW

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008) (quotation marks and citation omitted). The moving party bears the burden of proving the elements of a spoliation claim. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). These elements are: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Authority of N.Y & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (quoting *Residential Funding*, 306 F.3d at 107). With respect to electronically stored information ("ESI"), Rule 37(e) provides:

 If [ESI] that should have been preserved in the anticipation or conduct of litigation

>is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>   (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>   (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>       (A) presume that the lost information was unfavorable to the party;
>       (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>       (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

"Although Rule 37(e) does not specifically address the first element of spoliation, courts have recognized that the standard for showing that a party had an obligation to preserve evidence is the same for both ESI and non-ESI." *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 81 (S.D.N.Y. 2022). "Identifying the boundaries of the duty to preserve evidence involves two related inquiries: when does the duty to preserve attach, and what evidence must be preserved?" *Id.* at 81-82 (quotation marks and citation omitted). "In the case of alleged spoliation by a plaintiff, the preservation obligation is deemed to arise on the date the plaintiff sent a demand letter or notice of claim, or filed the complaint." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474 (S.D.N.Y. 2022). As to the scope of plaintiff's duty to preserve: "While a litigant is under no duty to keep or retain every document in [his] possession . . . [he] is under a duty to preserve what [he] knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (quotation marks and citation omitted).

### III.  DISCUSSION

The ICDs presently seek "an adverse inference or other appropriate sanctions due to Plaintiff's intentional spoliation of evidence."  Dkt. #669, at 4 (ECF pagination).  The ICDs specifically contend: (1) between July 2014 and December 2014, plaintiff used three cellular phones;[3] (2) plaintiff discarded those phones prior to, or soon after, commencing the instant litigation; and (3) plaintiff "concealed the existence of those phones for nearly two and a half years, until it was too late for Defendants to obtain text message and voice message[ ] information from alternative sources."  *Id.* at 6, 8.

As the ICDs correctly assert, plaintiff's duty to preserve evidence arose on October 1, 2014, upon service of the Notice of Claim.  Thus, the ICDs argue, as of October 1, 2014, plaintiff had a duty to preserve the cell phones associated with the Additional Numbers.  I disagree.  The crux of plaintiff's allegations against the ICDs is that they knowingly fabricated evidence and submitted false applications and supporting affidavits to acquire unlawful eavesdropping and search warrants, and made knowingly false, defamatory statements to the press regarding their investigation and prosecution of plaintiff.  Thus, plaintiff's claims (and defenses thereto) turn on the legitimacy of the ICDs' investigation and prosecution of plaintiff–which, in turn, centers on information known to, and the conduct of, the ICDs prior to July 2, 2014.  In other words, plaintiff had no duty to preserve information contained on cell phones he acquired after July 2, 2014, because that information would not be relevant to any claim or defense in the foreseeable

---

[3] Plaintiff admits that he used three Additional Numbers during this period, but states that they were associated with two, not three, phones.  This factual dispute does not significantly impact the Court's analysis of the ICDs' spoliation motion.

litigation.[4]

As for plaintiff's failure to disclose the Additional Numbers in June 2018, I agree with defendants that plaintiff had a duty to provide accurate information regarding the cell phones he had used, and that he failed to do so when first requested. But plaintiff subsequently supplemented and corrected his response, as he was required to do under Rule 26(e), so the issue before this Court is whether defendants were prejudiced by plaintiff's delayed disclosure. Defendants argue that plaintiff's delay prevented them from obtaining data from AT&T regarding plaintiff's text messages or voicemails, but have provided no authoritative information regarding AT&T's protocol for retaining such information. Instead, when the Court convened a telephonic hearing regarding this motion on August 22, 2022, and inquired regarding any such protocol, the ICD's counsel responded that their investigator was told by an AT&T representative that AT&T only preserves such information for two to three years. Assuming the accuracy of this guesstimate, the ICDs cannot show that they were prejudiced by plaintiff's incomplete 2018 disclosures; by June 2018, it was already too late to obtain 2014 text messages or voicemails from AT&T's records. Because the ICDs have the burden here and have failed to establish prejudice, there is no basis for sanctions.

Accordingly, the ICDs' motion for sanctions against plaintiff for his alleged intentional

---

[4] The Court stresses that the pre-suit duty to preserve evidence "is not boundless," *Townes v. Cove Haven, Inc.*, No. 00 Civ. 5603 (RCC), 2003 WL 22861921 at *4 (S.D.N.Y. 2003), and cannot be coextensive with the universe of information which may ultimately be deemed relevant and discoverable under Rule 26 after issue has been joined and after disputed issues of fact have crystallized in complex litigation. *See Zubulake*, 220 F.R.D. at 217. Potential litigants are ordinarily expected to preserve materials prepared by key players regarding key issues in foreseeable litigation, *id.* at 215, but cannot be required to foresee every twist and turn in future litigation or to anticipate every imaginative claim or defense which an adversary may ultimately advance.

spoliation of evidence is **DENIED**.[5]

The Clerk of the Court shall terminate the pending motion (Dkt. #667).

Dated: September 29, 2022
       White Plains, New York

                                            **SO ORDERED**

                                            _____
                                            PAUL E. DAVISON, U.S.M.J.

---

[5] Plaintiff, in his opposition to the instant motion, seeks Rule 11 sanctions against the ICDs on the ground that the instant motion is "frivolous." Dkt. #675, at 21-23 (ECF pagination). I disagree. While plaintiff's failure to preserve the cell phones or disclose the existence of the Additional Numbers does not amount to sanctionable spoliation (for the reasons discussed above), the chain of events leading to the ICDs' discovery of the Additional Numbers certainly called into question whether plaintiff was completely forthcoming, and understandably alerted the ICDs to the possibility of spoliation. Accordingly, plaintiff's cross-motion is DENIED.